UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------- x
MAGWIN ROACHE,                                              :
                                                            :
                                        Plaintiff,          :
                                                            :        MEMORANDUM & ORDER
                        -against-                           :
                                                            :        18-cv-6443 (ENV) (JO)
LONG ISLAND RAILROAD, BROTHERHOOD                           :
OF RAILROAD SIGNALMEN LOCAL 56,                             :
MICHAEL JUCHEM, in his individual capacity,                 :
CHARLES TATOR, in his individual capacity,                  :
JOHN HANANIA, in his individual capacity,                   :
CHRISTOPHER NATALE, in his individual                       :
capacity, and JAMES SOKOLOWSKI, in his                      :
individual capacity,                                        :
                                                            :
                                        Defendants.         :
------------------------------------------------------------- x

VITALIANO, D.J.

 Plaintiff Magwin Roache brings this action against Long Island Railroad ("LIRR") and

Michael Juchem, Charles Tator, and John Hanania, in their individual capacities (collectively,

the "LIRR defendants"), as well as the Brotherhood of Railroad Signalmen Local 56 ("BRS," or

the "union"), and Christopher Natale and James Sokolowski, in their individual capacities

(collectively, the "union defendants"), asserting numerous instances of racial discrimination and

retaliation arising out of his employment with LIRR and his membership in the union, in

violation of federal, state, and municipal law. *See generally* Am. Compl., Dkt. 6.  Defendants

now move to dismiss the amended complaint under Federal Rules of Civil Procedure 12(b)(1)

and (6).  For the reasons that follow, the union defendants' motion is granted, and the LIRR

defendants' motion is granted in part and denied in part.

<u>Background</u>

 Roache, who is African American and of Caribbean descent, began working for LIRR as

an assistant signalman in 2006.  Am. Compl. at 3, ¶ 12; ¶¶ 1–2.[1]  Roache has also been, at all relevant times, a member of BRS.  *Id.* ¶ 3.  The thrust of Roache's amended complaint is that, during his employment with LIRR, defendants repeatedly discriminated against him on the basis of his race and national origin, *id.* ¶ 4; refused to file formal grievances on his behalf to address the discrimination, *id.* ¶ 102; and retaliated against him after he filed grievances on his own behalf, *id.* ¶ 4.

More specifically, Roache contends that, from 2016 through 2018, he was overlooked for overtime opportunities on multiple occasions, and that, on at least two of these occasions, the opportunity was given to a less senior employee.  *Id.* ¶¶ 7, 14, 17, 29, 49, 96, 101.  In another instance of denied overtime, defendant Hanania, an LIRR supervisor, cancelled Roache's overtime shift after it had been scheduled by another supervisor.  *Id.* ¶ 39.

The denial of overtime, however, was the tip of the iceberg, he says.  In April 2016, Roache was instructed to "upgrade" from assistant foreman to foreman, but then-acting foreman Legg denied him the opportunity to comply with the upgrade.  *Id.* ¶ 21.  Nevertheless, Roache was promoted to the position of foreman of LIRR's Gang 25 in December of that year.  *Id.* ¶ 34.  Roache contends that Hanania then expressed that he should be removed from his position as foreman and stated that "people like [Roache] shouldn't be Foremen"—which Roache subjectively understood to mean people who are Black or of Caribbean descent—and that Hanania is "the Chief" and Roache is "the Indian."  *Id.* ¶¶ 42–43.  Then, in July 2017, defendants, in an effort to strip Roache of his foreman position, altered his schedule to force him to bid for his position, but, as the senior most qualified bidder, he was nevertheless awarded the

---

[1] Unless otherwise indicated by page number, paragraph numbers refer to those beginning in the "Factual Allegations" section on page four of the amended complaint.

position.  *Id.* ¶ 50.

Roache also alleges defendants stonewalled his requests for time off.  For example, in November of 2015, Roache was initially denied a time-off request for Thanksgiving, despite adhering to the collective bargaining agreement's ("CBA") requirement to find shift coverage. *Id.* ¶ 13.  Only after the intervention of BRS Local Chairman James Ridley was Roache granted his request.  *Id.*  Roache further contends that defendants "subjected [him] to unwarranted citations and requirements," *id.* ¶ 4, and "disciplined [him] for reasons [they] did not discipline his Caucasian colleagues for."  *Id.* ¶ 102.  In one instance, Roache was issued a dereliction of duty charge for failing to secure coverage for an open position, when, he contends, he volunteered to cover the shift himself but was prevented from doing so by Hanania, who instructed Roache that he could only work if all other foremen and assistant foremen refused to cover the shift.  *Id.* ¶ 45.  Roache maintains that no other foremen were subjected to the same restriction.  *Id.*

Roache was also issued disciplinary charges on four other occasions:  once for failing to report work being done by a vendor, *id.* ¶ 57; once for failing to secure coverage of a shift by a qualifying foreman or assistant foreman, *id.* ¶ 60; once for failing to prepare tasks for technicians when he was out sick, *id.* ¶ 61; and once for a reason not clearly specified in the amended complaint, *id.* ¶ 75.  Roache contends that other employees were not disciplined for similar infractions.  *Id.* ¶¶ 45, 47, 57–58, 73.

Continuing his recounting of arbitrary enforcement, Roache contends that, on December 8, 2015, defendant Juchem, an LIRR principal, required Roache to schedule his vacation at the beginning of the year and to fill out vacation request forms.  *Id.* ¶ 15.  No such policy, according to plaintiff, was enforced with respect to other employees.  *Id.*  In addition, Hanania imposed

certain email-reporting requirements on Roache's technicians, and he restricted where those technicians could eat lunch, but he did not impose similar requirements and restrictions on other technicians. *Id.* ¶¶ 48, 51–52, 54–55.

At some point prior to November 2017, Roache was demoted. *Id.* ¶ 80. Roache contends it is BRS's usual practice to represent Caucasian employees in the appeal of their demotion, but that defendant Natale, BRS general chairman, was instructed by the LIRR director of labor relations to deny Roache similar representation. *Id.* ¶ 84. Roache also accuses defendants of installing 10 cameras in his office, which they removed after he was demoted. *Id.* ¶¶ 68, 80. And, on October 23, 2017, Roache was instructed to make a "bump" to displace a less senior employee. *Id.* ¶¶ 77–78. Despite complying with that order, Roache was informed the next day that his bump was invalid, even though defendants permitted other employees to take similar action. *Id.* ¶ 78.

As for Roache's filed grievances, he claims that in September 2015, he reported "the harassment and hostility that he was subjected to," and he submitted phone recordings in support of his grievance. *Id.* ¶ 10. However, "instead of addressing the issues, [defendant and BRS Vice General Chairman] Sokolowski instructed [m]anagement to remove [Roache's] access to the phone recordings." *Id.* Roache filed another grievance on April 17, 2016, after receiving "negative emails" from an assistant foreman, but he never received a response from LIRR. *Id.* ¶¶ 19–20, 25–26. And, in May 2016, Roache brought a grievance to the LIRR Human Resources Department relating to a manager's "hostility" towards Roache, but Natale "instructed the BRS representative not to respond . . . [and subsequently] referred to [Roache] as a 'rat.'" *Id.* ¶¶ 23–24. On another occasion in 2016, Sokolowski refused to file a grievance on Roache's behalf, which Roache had made in connection with a missed overtime opportunity. *Id.* ¶ 18.

4

Then, in late 2017, Roache was instructed to file a grievance in connection with the invalidation of his "bump," but, instead of addressing the issue, Natale dissuaded Roache from pursuing the grievance. *Id.* ¶ 78. Finally, Roache filed a grievance in September 2018 for LIRR's failure to upgrade him. *Id.* ¶ 98.

Roache filed a claim with New York State Division of Human Rights ("NYSDHR") on December 12, 2017, charging LIRR with unlawful discriminatory employment practices, and he received a right-to-sue letter from the Equal Employment Opportunity Commission ("EEOC") on August 18, 2018. *Id.* at 3 ¶¶ 8–9. He initiated this action on November 13, 2018, *see* Dkt. 1, and he filed an amended complaint on November 19, 2018, contending LIRR violated Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000, by unlawfully discriminating against him on the basis of his race and national origin, and by retaliating against him for filing grievances in response to the alleged discrimination. *Id.* ¶¶ 103–12. Roache also claims that all defendants violated New York State Human Rights Law ("NYSHRL"), N.Y. Exec. Law § 296, and New York City Human Rights Law ("NYCHRL"), N.Y.C. Admin. Code § 8-107, for the same reasons.[2] *Id.* ¶¶ 113–26.

The union defendants have moved to dismiss Roache's remaining state and municipal law claims against them for lack of subject matter jurisdiction under Federal Rule of Civil Procedure 12(b)(1). *See generally* Union Defs.' Mem., Dkt. 31-1; Union Defs.' Reply, Dkt. 31-3. Separately, the LIRR defendants have moved to dismiss the amended complaint, in its entirety, pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6). *See generally* LIRR

---

[2] Roache's amended complaint included Title VII claims against all other defendants, and claims against the union defendants for violation of the duty of fair representation under the Railway Labor Act ("RLA"), 45 U.S.C. § 152, *see* Am. Compl. ¶¶ 103–12, 127–31, but he has since withdrawn those claims. *See* Pl.'s LIRR Opp'n, Dkt. 35, at 19–20; Pl.'s Union Opp'n, Dkt. 31-2, at 5.

Defs.' Mem., Dkt. 33.

<u>Legal Standard</u>

Under Federal Rule of Civil Procedure 12(b), a defendant may move to dismiss a complaint for lack of subject matter jurisdiction or for failure to state a claim upon which relief can be granted.  *See* Fed. R. Civ. P. 12(b)(1), (6).  "A case is properly dismissed for lack of subject matter jurisdiction under Rule 12(b)(1) when the district court lacks the statutory or constitutional power to adjudicate it."  *Makarova v. United States*, 201 F.3d 110, 113 (2d Cir. 2000).  "The plaintiff bears the burden of proving subject matter jurisdiction by a preponderance of the evidence."  *Aurecchione v. Schoolman Transp. Sys., Inc.*, 426 F.3d 635, 638 (2d Cir. 2005).  In determining whether it possesses subject matter jurisdiction, a district court may consider matters outside the pleadings.  *Makarova*, 201 F.3d at 113.  Because subject matter jurisdiction is a threshold issue, when a party moves to dismiss under both Rules 12(b)(1) and 12(b)(6), the motion court addresses the 12(b)(1) motion first.  *Sherman v. Black*, 510 F. Supp. 2d 193, 197 (E.D.N.Y. 2007) (citing *Rhulen Agency, Inc. v. Ala. Ins. Guar. Ass'n*, 896 F.2d 674, 678 (2d Cir. 1990)).

As for motions to dismiss for failure to state a claim, a court "must accept the factual allegations set forth in the complaint as true and draw all reasonable inferences in favor of the [p]laintiff."  *Anzelone v. ARS Nat'l Servs., Inc.*, No. 17-cv-4815, 2018 WL 3429906, at *2 (E.D.N.Y. July 16, 2018).  To survive such a motion, a complaint must plead enough facts "to state a claim to relief that is plausible on its face."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570, 127 S. Ct. 1955, 1974, 167 L. Ed. 2d 929 (2007).  Simply put, "[a] claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S. Ct. 1937, 1949, 173 L. Ed. 2d 868 (2009).  Although a plaintiff need not

provide "detailed factual allegations," *Twombly*, 550 U.S. at 555, the pleading rules demand

"more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Iqbal*, 556 U.S. at

678. Where, as here, matters outside the complaint are submitted in support of a Rule 12(b)(6)

motion, the Court "may, at its discretion, exclude the extraneous material and construe the

motion as one under Rule 12(b)(6)." *United States v. Int'l Longshoremen's Ass'n*, 518 F. Supp.

2d 422, 450 (E.D.N.Y. 2007).

Discussion

I.    <u>State and Municipal Law Claims</u>

Although Roache has withdrawn his duty of fair representation claims against the union

defendants under RLA, they have continued to brief whether his remaining NYSHRL and

NYCHRL claims are, in essence, nothing more than breach of the duty of fair representation

claims in masquerade, and are thus subject to preemption by RLA.[3]  Specifically, the union

defendants argue that Roache's NYSHRL and NYCHRL claims are "mere refinements" of his

breach-of-duty claims, notwithstanding Roache's withdrawal of those claims, requiring their

dismissal.  Union Defs.' Reply at 1 (quoting *Cooper v. TWA Airlines*, 349 F. Supp 2d 495, 507

(E.D.N.Y. 2004)); *see also id.* at 2–5.  Roache disagrees, arguing that the union defendants

discriminated and retaliated against him in capacities unrelated to their representation of him,

and that any allegation of inadequate representation serves only to "further support" his

NYSHRL and NYCHRL claims.  Pl.'s Union Opp'n at 9.  At any rate, in light of Roache's

withdrawing his duty of fair representation claims, the Court will consider Roache's allegations

---

[3] Under both NYSHRL and NYCHRL, a labor organization may not discriminate against any of
its members on account of race, creed, color, or national origin, N.Y. Exec. Law § 296(1)(c);
N.Y.C. Admin. Code § 8-107(1)(c), or retaliate against any person because of his or her
opposition such discrimination, N.Y. Exec. Law § 296(1)(e); N.Y.C. Admin. Code § 8-107(7).

only to the extent that they do not arise out of the union defendants' representation of him.[4]  *See Langford*, 765 F. Supp. 2d at 509 (finding that the duty of fair representation is not implicated where alleged discrimination is unrelated to a union's representation of plaintiff).

Even construing Roache's state and municipal law claims as unrelated to the union's duty of fair representation of him, he is barred from bringing such claims in federal court, not because they are preempted, as the union defendants argue, but because he elected to pursue those claims with NYSDHR.  New York Executive Law § 297(9) provides that "[a]ny person claiming to be aggrieved by an unlawful discriminatory practice shall have a cause of action in any court of

---

[4] It bears noting that, in discussing preemption, both Roache and the union defendants rely only on cases predating *Figueroa v. Foster*, 864 F.3d 222 (2d Cir. 2017), in which the Second Circuit, for the first time, addressed whether an NYSHRL claim of discrimination against a labor organization is preempted by the duty of fair representation under federal law.  Prior to *Figueroa*, the majority of courts in this circuit had adhered to the principle that state law civil rights claims against a labor organization in its representative capacity are subsumed by the duty of fair representation, and are, therefore, preempted.  *See, e.g.*, *Holcombe v. U.S. Airways Grp., Inc.*, 976 F. Supp. 2d 326, 338 (E.D.N.Y. 2013) (claims that a labor union "failed to pursue and properly manage grievances on [plaintiff's] behalf . . . for discriminatory and retaliatory reasons" were subsumed by the duty of fair representation and preempted by RLA); *Cooper*, 349 F. Supp. 2d at 507 ("Because federal labor law defines the scope of the duty of fair representation a union owes to its members, state law claims that are 'mere refinements' of the duty of fair representation are preempted" by RLA (citation omitted)); *Agosto v. Corr. Officers Benevolent Ass'n*, 107 F. Supp. 2d 294, 310–11 (S.D.N.Y. 2000) (dismissing, on summary judgment, NYSHRL claims for discrimination and retaliation against a union, holding that those claims were "premised on the duty of fair representation" under the National Labor Relations Act and were, consequently, preempted); *see also Langford v. Int'l Union of Operating Engineers, Local 30*, 765 F. Supp. 2d 486, 507–08 (S.D.N.Y. 2011) (collecting cases).  In finding that the duty of fair representation does not preempt "NYSHRL in its entirety when applied to unions acting in their capacity as collective bargaining agents," *Figueroa*, 864 F.3d at 235 (emphasis omitted), the Second Circuit rejected a field preemption framework, whereby "Congress has legislated so comprehensively that federal law occupies an entire field of regulation and leaves no room for state law."  *Id.* at 227–28, 231–32 (citation omitted).  Instead, it employed a conflict preemption framework, which examines whether either compliance with both state and federal law is an impossibility, or "the local law is an obstacle to the achievement of federal objectives."  *Id.* at 227–28, 232 (citation omitted).  Ultimately, the Second Circuit held that, as a general rule, the shared anti-discriminatory purposes of the duty of fair representation and NYSHRL do not render the two in conflict, opening the door for plaintiffs to bring both claims in federal court against a labor union stemming from inadequate representation.  *Id.* at 235.

appropriate jurisdiction for damages . . . unless such person had filed a complaint . . . with any local commission on human rights." N.Y. Exec. Law § 297(9). The language of New York City Administrative Code § 8-502(a) is "'nearly identical to that of [New York Executive Law] § 279(9),' and discussion of the latter applies equally to the former." *York v. Ass'n of the Bar of the City of New York*, 286 F.3d 122, 127 (2d Cir. 2002) (quoting *York v. Ass'n of the Bar of the City of New York*, No. 00-cv-5961, 2001 WL 776944, at \*5 (S.D.N.Y. July 9, 2001)). These "election-of-remedies provisions" mandate that NYSHRL and NYCHRL claims brought before NYSDHR "may not be brought again as a plenary action in another court." *Jones v. N.Y.C. Dep't of Educ.*, 286 F. Supp. 3d 442, 446 (E.D.N.Y. 2018) (quoting *York*, 286 F.3d at 127). The election-of-remedies bar is jurisdictional, requiring dismissal pursuant to Rule 12(b)(1), and "has been construed to cover claims arising out of the 'same incident on which plaintiff's [NY]SDHR complaint was based [i.e.,] . . . if they are based on the same operative events,'" *Horsham v. Fresh Direct*, 136 F. Supp. 3d 253, 268 (E.D.N.Y. 2015) (quoting *Williams v. City of New York*, 916 F. Supp. 2d 517, 521 (S.D.N.Y. 2013)), unless a statutory exception—either dismissal of the earlier claims on the grounds of administrative convenience or untimeliness, or the annulment of the election of remedies—is satisfied. N.Y. Exec. Law § 297(9); N.Y.C. Admin. Code § 8-502(b); *see also Jeter v. N.Y.C. Dep't of Educ.*, 549 F. Supp. 2d 295, 302 (E.D.N.Y. 2008). "The facts need not be perfectly identical, and merely adding some additional facts and/or re-labeling the claim will not prevent the application of the doctrine of election of remedies." *Edner v. NYCTA-MTA*, 134 F. Supp. 3d 657, 667 (E.D.N.Y. 2015) (quoting *DeBerry v. Brookdale Univ. Hosp. & Med. Ctr.*, 11 F. Supp. 3d 387, 392 (E.D.N.Y. 2014)). The jurisdictional bar operates against all defendants in a subsequent federal action, even those not named in the NYSDHR complaint. *Jones*, 286 F. Supp. 3d at 446.

Set against this landscape, Roache's NYSHRL and NYCHRL claims survive only upon satisfaction of a statutory exception, or if they do not arise out of "substantially the same facts" as the claim filed with NYSDHR.  *Edner*, 134 F. Supp. 3d at 666 (citation omitted).  Yet his contention that he complied with the administrative exhaustion requirements of Title VII forecloses any such possibility.  A plaintiff must, prior to filing a Title VII lawsuit in federal court, file a timely complaint with EEOC.[5]  42 U.S.C. § 2000e-5(e)–(f); *see also Watson v. Richmond Univ. Med. Ctr.*, 412 F. Supp. 3d 147, 159 (E.D.N.Y. 2017).  Only after receiving a right-to-sue letter may he bring his claim, or one "reasonably related" to that which was filed with EEOC, to federal court.[6]  *Legnani v. Alitalia Linee Aeree Italiane, S.P.A.*, 274 F.3d 683, 686 (2d Cir. 2001) (quoting *Shah v. N.Y.S. Dep't of Civil Serv.*, 168 F.3d 610, 614 (2d Cir. 1999)).  Conceivably, there may exist a lacuna in which a Title VII claim may be "reasonably related" to an administrative claim over which the court may exercise supplemental jurisdiction, yet not arise out of "substantially the same facts," allowing plaintiff to skirt the election-of-remedies bar.  But, such a sticky wicket is avoided here, as Roache's Title VII claim and his NYSHRL and NYCHRL claims are founded upon the same factual allegations, and he makes no effort to distinguish them.  *See* Am. Compl. ¶¶ 103–126.  Furthermore, Roache offers no

---

[5] Pursuant to a work-sharing agreement between NYSDHR and EEOC, "[e]ach agency designates the other as its agent for the purpose of receiving and drafting charges." *Tewksbury v. Ottaway Newspapers*, 192 F.3d 322, 327 (2d Cir. 1999) (original alterations omitted) (quoting *McGuirk v. E. Gen. Ins. Agency*, 997 F. Supp. 395, 397 (W.D.N.Y. 1998)).  As a result, claims filed with NYSDHR are "deemed received" by EEOC.  29 C.F.R. § 1626.10; *see also Ford v. Bernard Fineson Dev. Ctr.*, 81 F.3d 304, 307 n.5 (2d Cir. 1996).

[6] The "odd dichotomy" of requiring the administrative exhaustion of federal claims, but barring suit as to state and municipal law claims brought before NYSDHR, has not escaped courts' attention.  *See Jones*, 286 F. Supp. 3d at 446 n.1.  Perhaps it also calls into question the need for three nearly identical forms of remedy designed to right the same wrong with essentially identical relief.

indication that an exception to the election-of-remedies bar has been satisfied, nor does he contend that his NYSDHR complaint otherwise evidenced his intent not to elect an administrative remedy.  *See Drew v. Plaza Const. Corp.*, 688 F. Supp. 2d 270, 278 (S.D.N.Y. 2010).  As a result, Roache's NYSHRL and NYCHRL claims are dismissed for lack of subject matter jurisdiction, but without prejudice and with leave to amend, provided Roache can, in good faith, plausibly plead his way into the lacuna or otherwise provide facts sufficient to establish this Court's subject matter jurisdiction over those claims.

II.    RLA

The LIRR defendants argue that Roache's remaining Title VII claims should be dismissed for lack of subject matter jurisdiction as "preempted" by RLA because they arise out of the CBA between BRS and LIRR, and are, therefore, subject to RLA's mandatory arbitration procedures.  *See* LIRR Defs.' Mem. at 10–13.  Yet, its substance aside, the argument's mislabeling sets it on the wrong foot.  The doctrine of preemption, which derives from the Supremacy Clause of the U.S. Constitution, operates to render only state or local laws "without effect" if in conflict with federal law.  *Altria Grp., Inc. v. Good*, 555 U.S. 70, 76, 129 S. Ct. 538, 543, 172 L. Ed. 2d 398 (2008) (quoting *Maryland v. Louisiana*, 451 U.S. 725, 746, 101 S. Ct. 2114, 2129, 68 L. Ed. 2d 576 (1981)).  The LIRR defendants' argument, which suggests a conflict between two federal laws, is more appropriately framed as one of preclusion, not preemption.  *See Willis v. Verizon New York, Inc.*, No. 11-cv-5078, 2012 WL 2370125, at *5 (E.D.N.Y. June 22, 2012); *Crayton v. Long Island R.R.*, No. 05-cv-1721 (SLT) (SMG), 2006 WL 3833114, at *4 n.5, *5 (E.D.N.Y. Dec. 29, 2006).

Bearing in mind the "well-established law that strongly disfavors preclusion of one federal statute by another absent express manifestations of preclusive intent," *United States v. Sforza*, 326 F.3d 107, 111 (2d Cir. 2003), evaluation of the LIRR defendants' argument depends

on whether Title VII is incompatible with RLA, or, instead, whether the two statutes may be harmonized.  *See United States v. Estate of Romani*, 523 U.S. 517, 530, 118 S. Ct. 1478, 1486, 140 L. Ed. 2d 710 (1998); *Brown v. Ill. Cent. R.R.*, 254 F.3d 654, 662 (7th Cir. 2001) (the proper task of a court is to "analyze the [Americans with Disabilities Act ("ADA")] and the RLA to determine if they are incompatible or if they can be harmonized" (internal quotation marks omitted)).  Notwithstanding the distinction between preemption and preclusion, however, the Court looks to the principles of preemption, developed through a robust body of case law analyzing RLA's preemptive effect, to guide its analysis.  *See Brown*, 254 F.3d at 662–63 ("[T]he RLA preemption standard remains relevant to the preclusion inquiry, . . . [such that] the preemption standard should govern in a preclusion case unless the analysis of the two federal statutes clearly suggests otherwise.").

Analytically, RLA requires arbitration of so-called "minor disputes,"[7] or "disputes between an employee or group of employees and a carrier or carriers growing out of grievances or out of the interpretation or application of agreements concerning rates of pay, rules, or working conditions."  45 U.S.C. § 153(i); *Hawaiian Airlines*, 512 U.S. at 252–53.  Such requirement aligns with its stated purpose "to provide for the prompt and orderly settlement of all disputes growing out of grievances or out of the interpretation or application of agreements covering rates of pay, rules, or working conditions."  45 U.S.C. § 151a; *see also Hawaiian Airlines*, 512 U.S. at 252 ("Congress' purpose in passing the RLA was to promote stability in

---

[7] Although not at issue here, RLA also requires the "prompt and orderly settlement of all disputes concerning rates of pay, rules, or working conditions," 45 U.S.C. § 151a, or "major disputes."  *See Hawaiian Airlines v. Norris*, 512 U.S. 246, 252, 114 S. Ct. 2239, 2244, 129 L. Ed. 2d 203 (1994).  As a rule of thumb, "major disputes seek to create contractual rights, minor disputes to enforce them."  *Consol. Rail Corp. v. Ry. Labor Executives' Ass'n*, 491 U.S. 299, 302, 109 S. Ct. 2477, 2480, 105 L. Ed. 2d 250 (1989).

labor-management relations by providing a comprehensive framework for resolving labor disputes."). Thus, claims requiring the interpretation of a bargained-for agreement, such as the CBA here, or claims growing out of "disagreements over how to give effect to" such agreements, are "minor disputes" over which federal courts lack jurisdiction. *Id.* at 254; *Sullivan v. Am. Airlines*, 424 F.3d 267, 273 (2d Cir. 2005). Stated differently, "'minor disputes' subject to RLA arbitration are those that involve duties and rights created or defined by the CBA." *Hawaiian Airlines*, 512 U.S. at 258.

"[N]ot every dispute concerning employment, or tangentially involving a provision of a collective-bargaining agreement," however, "is pre-empted" or precluded. *Id.* at 260 (quoting *Allis-Chalmers Corp. v. Lueck*, 471 U.S. 202, 211, 105 S. Ct. 1904, 1911, 85 L. Ed. 2d 206 (1985)). Claims or rights "independent" of the CBA—that is, where a court is presented with "purely factual questions" that do not depend on the meaning of a CBA's provisions—may be resolved in federal court. *Id.* at 261–63 (citing *Lingle v. Norge Div. of Magic Chef, Inc.*, 486 U.S. 399, 407–410, 108 S. Ct. 1877, 1882–83, 100 L. Ed. 2d 410 (1988)).

Roache argues that because Title VII, not the CBA, protects him from discrimination and retaliation on account of race or nationality, his claims are "independent" of the CBA. Pl.'s LIRR Opp'n at 12–14. By extension, Roache appears to argue that federal civil rights claims are categorically excepted from RLA's dispute-resolution procedures, a position undermined by the weight of authority. *See Crayton*, 2006 WL 3833114, at *5 (collecting cases). On the other side of the equation, the LIRR defendants argue that Roache's initial burden requires his showing he was qualified for the positions or benefits he sought, which, in turn, demands construction of the CBA. LIRR Defs.' Mem. at 10–13. Their argument is equally untenable, however, as its acceptance risks "interpret[ing] the RLA as excluding a class of employees from statutory

protections against employment discrimination and retaliation." *Carlson v. CSX Transp., Inc.*, 758 F.3d 819, 832 (7th Cir. 2014).

This contentious stalemate is hardly surprising, as courts have long been divided on their approach to the issue of RLA preclusion of discrimination claims, caused in no small way, as one circuit observed, by "somewhat imprecise and often conflicting language in the cases that discuss" the issue. *Adams v. Am. Airlines*, 202 F.3d 281, 2000 WL 14399, at *7 (10th Cir. 2000) (unpublished table decision) (discussing *Hawaiian Airlines*, 512 U.S. at 256); *see also Trans World Airlines v. Sinicropi*, 887 F. Supp. 595, 605 (S.D.N.Y. 1995), *aff'd*, 84 F.3d 116 (2d Cir. 1996) (noting that "[w]hile the standard 'independent of the collective bargaining agreement' appears simple on its face, application of the standard to particular fact patterns has not proven easy"). One formulation adopted by courts in this circuit, for example, calls for determining whether "the subject of the dispute or the dispute is substantially dependent upon an analysis of the terms of a collective bargaining agreement," which may "dispositively resolve[]" the dispute. *Crayton*, 2006 WL 3833114, at *4 (quoting *Brown*, 254 F.3d at 668) (finding subject matter jurisdiction lacking over a Title VII discrimination claim that required proving plaintiff was not disqualified from his position, proof that depended on the interpretation of the CBA); *see also Parker v. Metro. Transp. Auth.*, 97 F. Supp. 2d 437, 447–48 (S.D.N.Y. 2000) (discrimination claims under ADA precluded by RLA where an assessment of plaintiff's qualifications required interpretation of the CBA); *but see Cramer v. Consol. Freightways, Inc.,* 255 F.3d 683, 691 (9th Cir. 2001) (en banc) ("'Substantial dependence' on a CBA is an inexact concept, turning on the specific facts of each case, and the distinction between 'looking to' a CBA and 'interpreting' it is not always clear or amenable to a bright-line test."). Another approach looks to the adequacy of an arbitral forum for resolving disputes of federal law. *See Adams v. N.J. Transit Rail*

*Operations*, No. 97-cv-430 (LAP), 2000 WL 224107, at *9 (S.D.N.Y. Feb. 28, 2000) (holding

that "[RLA] arbitration should not be the sole avenue of protection [of federal discrimination and

retaliation claims] unless Congress has so specified" (citing *Bates v. Long Island R.R.*, 997 F.2d

1028, 1034 (2d Cir. 1993)).

A third approach, which the Court finds most persuasive, requires examination of the

"the ultimate or specific relief sought by the aggrieved party." *Sinicropi*, 887 F. Supp. at 606;

*see also Prokopiou v. Long Island R.R.*, No. 06-cv-2558 (KNF), 2007 WL 1098696, at *5

(S.D.N.Y. Apr. 9, 2007) (retaining subject matter jurisdiction where plaintiff did not seek a court

order for defendant to comply with the provisions of the governing agreement); *D'Amato v. Long

Island R.R. Co.*, No. 99-cv-1797 (NRB), 2001 WL 563569, at *3 (S.D.N.Y. May 24, 2001)

(ADA claim not precluded by RLA where plaintiff did not seek to vindicate rights under the

CBA, and, therefore, no interpretation of its provisions was required).  The court's formulation in

*Sinicropi* is instructive, and neatly aligns with the directive of the Supreme Court in *Hawaiian

Airlines* to look to the source of the right plaintiff asserts:

> If this specific right is generated from a source outside of the collective bargaining
> agreement, a party may employ an alternative available mechanism to vindicate it.
> If, however, the specific right owes its existence solely to the terms of the collective
> bargaining agreement, the RLA arbitration mechanism must be the exclusive
> vehicle for vindication of that right.

*Sinicropi*, 887 F. Supp. at 606; *see Hawaiian Airlines*, 512 U.S. at 257–58.

Circling back, the LIRR defendants characterize Roache's claims as deriving exclusively

from the CBA.  *See* LIRR Defs.' Mem. at 11–12.  They are correct in the sense that eligibility for

overtime, and the procedures for filing grievances, appear to be governed by the CBA.  *See*

Marilyn Kustoff Decl., Dkt. 34, ¶ 4 & Ex. A.  Yet their argument overlooks the central

contention of Roache's argument that, because of his race or nationality, the LIRR defendants

denied him benefits and opportunities, or arbitrarily imposed obligations upon him, relative to

less qualified colleagues.  He does not, therefore, seek to vindicate his rights under the CBA, nor

does he seek a judicial mandate that the LIRR defendants must comply with the CBA.  Instead,

he "seeks the same opportunities  . . . [given] to other employees who are not foreign-born."

*Prokopiou*, 2007 WL 1098696, at *5.  In other words, effectively, Roache is not contesting

whether the LIRR defendants have properly administered rights granted by the CBA, but rather

that the LIRR defendants interpreted those rights differently and adversely when dealing with

him.  Such claims are not "minor disputes" under RLA, and, accordingly, the Court retains

jurisdiction over them.

III.   Timeliness of Roache's Title VII Claims

As discussed above, prior to filing a Title VII claim in federal court, a person claiming to

be the victim of employment discrimination or retaliation must exhaust his administrative

remedies by first filing a charge with EEOC and receiving a right-to-sue letter.  42 U.S.C.

§ 2000e-5; *Tewksbury*, 192 F.3d at 325.  Where a state, such as New York, authorizes an agency

to address charges of employment discrimination, such charges must be filed within 300 days

"after the alleged unlawful employment practice occurred."  42 U.S.C. § 2000e-5(e)(1); *Ragone*

*v. Atl. Video at Manhattan Ctr.*, 595 F.3d 115, 126 (2d Cir. 2010).  "The filing requirement is

analogous to a statute of limitations, barring all claims arising outside the 300-day period" prior

to the filing of the charge.  *Russell v. Cty. of Nassau*, 696 F. Supp. 2d 213, 226 (E.D.N.Y. 2010).

Although claims arising outside the 300-day limitations period are time-barred, a plaintiff may

nevertheless cite prior specific conduct as "background evidence" to support his timely claims.

*Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 113, 122 S. Ct. 2061, 2072, 153 L. Ed. 2d

106 (2002).

A timeliness determination thus begins with an examination of the alleged discriminatory

"practice," defined "to apply to a discrete act or single 'occurrence,' even when it has a

connection to other acts." *Id.* at 111.  Certain adverse employment actions, such as termination,

failure to promote, or denial of a transfer, are easily identifiable, and "'occur[] on the day that

[they] 'happened.'" *Id.* at 110.  Where multiple discrete unlawful acts are alleged to have

occurred, "[e]ach discrete discriminatory act starts a new clock for filing charges alleging that

act." *Id.* at 113.  Here, only those discriminatory acts occurring on or after February 15, 2017—

300 days prior to when Roache filed a charge with NYSDHR on December 12, 2017—may

support a timely claim under Title VII.[8]  *See id.* at 114–15.

Roache, citing *Vega v. Hempstead Union Free School District*, 801 F.3d 72, 78–79 (2d

Cir. 2015), nevertheless attempts to reach back further, arguing that he has been subject to "an

ongoing adverse employment action . . . which began outside the statutory period," such that the

earlier claims are timely.  Pl.'s LIRR Opp'n at 15.  The Court disagrees with Roache's reading of

*Vega*, which instead holds that, just as claims that would otherwise be time-barred cannot be

revived by discrete acts occurring within the limitations period, the former does not render the

---

[8] According to the amended complaint, LIRR's discrimination and retaliation persisted after
Roache filed his claim with NYSDHR.  A claim founded upon subsequent conduct is considered
exhausted only if it is reasonably related to the conduct alleged in the administrative claim,
meaning: (1) "the claim would fall within the reasonably expected scope of an EEOC
investigation of the charges of discrimination;" (2) "it alleges retaliation for filing the EEOC
charge"; or (3) "the plaintiff 'alleges further incidents of discrimination carried out in precisely
the same manner alleged in the EEOC charge.'"  *Alfano v. Costello*, 294 F.3d 365, 381 (2d Cir.
2002) (quoting *Butts v. City of N.Y. Dep't of Hous. Preservation and Dev.*, 990 F.2d 1397, 1402–
03 (2d Cir. 1993)).  Title VII's administrative exhaustion requirement, however, is not
jurisdictional, but merely a precondition to federal suit, and one that can be waived.  *Francis v.
City of New York*, 235 F.3d 763, 768 (2d Cir. 2000).  Therefore, even if Roache's claims arising
out of conduct that occurred after December 12, 2017 are not reasonably related to the conduct
alleged in his administrative filing, LIRR has waived the precondition to suit as to those claims
by challenging their sufficiency.  *See id.*; *see also Bowen-Hooks v. City of New York*, 13 F. Supp.
3d 179, 203–04 (E.D.N.Y. 2014) (holding that defendants' addressing the merits of unexhausted
claims constitutes a waiver of their objection).

latter time-barred simply because of an ongoing practice of discrimination.[9]  *Vega*, 801 F.3d at

79–80.  Focusing only on the date a discrete act is alleged to have occurred, rather than when an

ongoing practice of discrimination began, the Court concludes that only the claims arising from

discrete acts that occurred on or after February 15, 2017, are not time-barred.

IV.    Sufficiency of Title VII Claims

      A.    *Discrimination Under Title VII*

Title VII prohibits, as an "unlawful employment practice," the "discriminat[ion] against

any individual . . . because of such individual's race, color, religion, sex, or national origin."  42

U.S.C. § 2000e-2(a)(1).  Under the familiar burden-shifting framework of *McDonnell Douglas*

*Corp v. Green*, 411 U.S. 792, 802 93 S. Ct. 1817, 36 L. Ed. 2d 668 (1973), a *prima facie* claim

for discrimination is established by showing: (1) that the plaintiff is a member of a protected

class; (2) that he was qualified for his position; (3) that he suffered an adverse employment

action; and (4) that discriminatory intent may be inferred from the circumstances.  *See Weinstock*

*v. Columbia Univ.*, 224 F.3d 33, 42 (2d Cir. 2000).  At the pleading stage, however, a plaintiff

need not establish a *prima facie* case of discrimination in his complaint; instead, he must

plausibly allege only that "(1) the employer took adverse action against him, and (2) his race,

---

[9] Certain forms of discrimination, such as the creation of a hostile work environment, take shape
only after the accumulation of indignities, each of which alone may be insufficient to support a
Title VII claim.  *See Gonzalez v. Hasty*, 802 F.3d 212, 220 (2d Cir. 2015).  The "continuing
violation" doctrine of Title VII accounts for such discrimination by treating "a series of separate
acts" as "constitut[ing] one 'unlawful employment practice,'" *Morgan*, 536 U.S. at 117 (quoting
42 U.S.C. § 2000e–5(e)(1)), allowing "the commencement of the statute of limitations period
[to] be delayed until the last discriminatory act in furtherance of it."  *Washington v. Cty. of
Rockland*, 373 F.3d 310, 317 (2d Cir. 2004) (quoting *Fitzgerald v. Henderson*, 251 F.3d 345, 359
(2d Cir. 2001)).  Because Roache has conceded he does not allege a hostile work environment,
Pl.'s LIRR Opp'n at 24–25, and he instead alleges "identifiable discrete actions" of
discrimination, *id.* at 14, he may not rely on the continuing violation doctrine to revive time-
barred claims.

color, religion, sex, or national origin was a motivating factor in the employment decision."

*Vega*, 801 F.3d at 87.

A plaintiff satisfies the first element if he "endures a 'materially adverse change' in the terms and conditions of employment" that is "more disruptive than a mere inconvenience or an alteration of job responsibilities." *Raspardo v. Carlone*, 770 F.3d 97, 125–26 (2d Cir. 2014) (quoting *Galabya v. N.Y.C. Bd. of Educ.*, 202 F.3d 636, 640 (2d Cir. 2000)).  Examples include "termination of employment, a demotion evidenced by a decrease in wage or salary, a less distinguished title, a material loss of benefits, significantly diminished material responsibilities, or other indices . . . unique to a particular situation." *Feingold v. New York*, 366 F.3d 138, 152 (2d Cir. 2004) (quoting *Galabya*, 202 F.3d at 640).

To the best the Court can discern, Roache contends LIRR committed the following types of discrete acts of discrimination on or after February 15, 2017: (1) the issuance of disciplinary charges against him, Am. Comp. ¶¶ 45, 57, 60–62, 75; (2) the failure to respond to grievances regarding discrimination or requests for personnel files, *id.* ¶¶ 86–93, 98; (3) negative comments made to him or about him, *id.* ¶¶ 41–43, 55; (4) the cancellation of properly authorized overtime or refusal of requests to work overtime, *id.* ¶¶ 39, 49, 96, 101; (5) the denial, *id.* ¶¶ 76, 78, or attempted denial, *id.* ¶¶ 50, 84, of resources, labor representation and opportunities for increased responsibility; and (6) the imposition of burdensome, harassing or arbitrary policies and responsibilities, *id.* ¶¶ 44, 46–48, 51–52, 54, 59, 68, 72.  He also contends that he was demoted in November 2017.  *Id.* ¶¶ 68, 80, 84.

LIRR argues, correctly, that negative comments, disciplinary citations, and the failure to investigate complaints do not constitute adverse employment actions.  LIRR Defs.' Mem. at 16–17; *see Fincher v. Depository Tr. & Clearing Corp.*, 604 F.3d 712, 721 (2d Cir. 2010) (no

adverse employment action where an employer failed to investigate a complaint of discrimination in alleged retaliation for filing that complaint); *Krishnapillai v. Donahoe*, No. 09-cv-1022 (NGG) (SMG), 2013 WL 5423724, at *11 (E.D.N.Y. Sept. 26, 2013) (disciplinary action against a plaintiff may inform a finding of other alleged adverse employment actions, but such action alone cannot form an independent basis for a discrimination claim); *Scott v. City of N.Y. Dep't of Corr.*, 641 F. Supp. 2d 211, 231 (S.D.N.Y. 2009), *aff'd*, 445 F. App'x 389 (2d Cir. 2011) (collecting cases, and holding that "verbal abuse is typically insufficient to constitute an 'adverse employment action'").  Furthermore, changes in, or denial of, responsibility are not actionable under Title VII unless they are "so significant as to constitute a setback to the plaintiff's career."  *Edwards v. Huntington Union Free Sch. Dist.*, 957 F. Supp. 2d 203, 211 (E.D.N.Y. 2013) (quoting *Galabya*, 202 F.3d at 641).  Similarly, allegations of inconsistent application of "ministerial" workplace policies not affecting pay or privileges of employment, or not resulting in demotion, fail to support a viable claim for discrimination.  *Sosa v. N.Y.C. Dep't of Educ.*, 368 F. Supp. 3d 489, 513 (E.D.N.Y. 2019).  Roache fails to allege such setbacks or effects stemming from orders and policies aimed at him and technicians under his supervision, Am. Compl. ¶¶ 46–48, 54, 59, 72, 76, 78, the "attempt" to hold Roache responsible for the compliance of his supervisees, *id.* ¶ 51, or the ensuing "hostility" and "tension" due to the policies, *id.* ¶ 52, 54.  Nor do his allegations that LIRR misled him to believe he would mentor assistant foremen, *id.* ¶ 44, or that it installed cameras in the office space he shared with others, *id.* ¶¶ 68, 82, fit the mold of "materially adverse changes" to his employment conditions.  *See Raspardo*, 770 F.3d at 125–26.

The gates to discovery and allied pretrial proceedings, however, have not yet closed, as Roache's demotion undeniably qualifies as a materially adverse employment action.  *See*

*Mathirampuzha v. Potter*, 548 F.3d 70, 78 (2d Cir. 2008). Furthermore, the denial of opportunity to work overtime or earn greater responsibility may be considered sufficiently adverse to support a discrimination claim. *See DeLuca v. Sirius XM Radio, Inc.*, No. 12-cv-8239 (CM), 2017 WL 3671038, at *14 (S.D.N.Y. Aug. 7, 2017) (change in workplace responsibilities or denial of opportunities that results in revocation or denial of overtime eligibility may have an adverse impact on employment); *Johnson v. Long Island Univ.*, 58 F. Supp. 3d 211, 223–24 (E.D.N.Y. 2014) (the denial of an opportunity to earn additional compensation constitutes an adverse employment action); *Agostinello v. Great Neck Union Free Sch. Dist.*, No. 05-cv-5838 (WDW), 2009 WL 238865, at *20 (E.D.N.Y. Feb. 2, 2009), *aff'd*, 353 F. App'x 589 (2d Cir. 2009) (a denial of opportunities to work overtime "might amount to an adverse employment action"). Here, Roache recounts numerous incidents in which he was denied overtime outright, or provided only a short timeframe to request overtime, the lapse of which resulted in his loss of opportunity to place his request. Am. Compl. ¶¶ 39, 49, 96, 101. In short, Roache's allegations relating to his demotion and denial of overtime plausibly recount adverse employment actions.

As to the second element, a plaintiff carries a "*minimal* burden" to supply facts that "give plausible support to a minimal inference of discriminatory motivation." *Vega*, 801 F.3d at 84–85 (quoting *Littlejohn v. City of New York*, 795 F.3d 297, 311 (2d Cir. 2015)). An inference of discriminatory motivation may be supported directly, such as by statements that an adverse employment action was related to plaintiff's protected class, *see Haskell v. Kaman Corp.*, 743 F.2d 113, 119 (2d Cir. 1984), or indirectly by an allegation that plaintiff was treated different from and less favorably than similarly situated peers, *see Marquez v. Starrett City Assocs.*, 406 F. Supp. 3d 197, 208–09 (E.D.N.Y. 2017). Clearing this low pleading threshold "entitles the plaintiff to the temporary presumption of *McDonnell Douglas* until the defendant furnishes its

asserted reasons for its action against the plaintiff," *Doe v. Columbia Univ.*, 831 F.3d 46, 55 (2d Cir. 2016), the evaluation of which is more appropriately considered at summary judgment or at trial, *Levy v. Legal Aid Soc'y*, 408 F. Supp. 3d 209, 216 (E.D.N.Y. 2019).

Here, Roache plausibly contends that he was demoted and was denied opportunities to work overtime afforded not merely to similarly situated, but to less qualified, colleagues.  Such allegations, albeit suffering from a lack of specificity, thus placing them on the razor's edge of plausibility, are sufficient to create an inference of discrimination, *see Johnson*, 58 F. Supp. 3d at 224, and LIRR's attempt to refute his eligibility for such benefits is inappropriate at this stage. *Levy*, 408 F. Supp. 3d at 216; *see* Kustoff Decl.; LIRR Defs.' Mem. at 1– 2, 20.  In any event, Roache's allegation that Hanania, who had denied Roache overtime work, had stated just weeks prior to one such denial that "people like [Roache] shouldn't be Foremen," and that Roache was the "Indian" to his "Chief," Am. Compl. ¶ 43, provides further support of discriminatory motive to allow for discovery.  That Hanania's comments did not explicitly refer to Roache's race or national origin may create ambiguity as to his intended meaning, but the Court must, in making its plausibility determination, "draw on its judicial experience and common sense."  *Vega*, 801 F.3d at 86 (2d Cir. 2015) (quoting *Iqbal*, 556 U.S. at 678).  At the very least, the remarks create a "minimal inference" of discriminatory motive.  *Id.* at 84 (quoting *Littlejohn*, 795 F.3d at 311). Accordingly, Roache may proceed with his discrimination claims, but only as to those that plausibly arise out of materially adverse employment actions, as catalogued above.

B.     *Retaliation Under Title VII*

Claims for retaliation under Title VII are also subject to the *McDonnell Douglas* burden-shifting framework, requiring a plaintiff to first establish "1) participation in a protected activity; 2) the defendant's knowledge of the protected activity; 3) an adverse employment action; and 4) a causal connection between the protected activity and the adverse employment action."  *Zann*

*Kwan v. Andalex Grp. LLC*, 737 F.3d 834, 844 (2d Cir. 2013) (internal quotation marks omitted) (quoting *Jute v. Hamilton Sundstrand Corp.*, 420 F.3d 166, 173 (2d Cir. 2005)).  Participation in a protected activity depends not on whether "the conditions against which [plaintiff] protested actually amounted to a violation of Title VII," but rather, that "he had a 'good faith, reasonable belief that the underlying challenged actions of the employer violated the law.'"  *Wimmer v. Suffolk Cty. Police Dep't*, 176 F.3d 125, 134 (2d Cir. 1999) (quoting *Manoharan v. Columbia Univ. Coll. of Physicians & Surgeons*, 842 F.2d 590, 593 (2d Cir. 1988)).  In addition, and relevant here, proof of a "causal connection" requires more than a showing that the "retaliation was a 'substantial' or 'motivating' factor in the employer's decision."  *Vega*, 801 F.3d at 90–91 (quoting *Univ. of Texas Sw. Med. Ctr. v. Nassar*, 570 U.S. 338, 348, 133 S. Ct. 2517, 2526, 186 L. Ed. 2d 503 (2013)).  Instead, it must be shown that "the unlawful retaliation would not have occurred in the absence of the alleged wrongful action or actions of the employer."  *Nassar*, 570 U.S. at 360.  At the pleading stage, a plaintiff must "plausibly plead a connection between the act and his engagement in protected activity" to suggest the plaintiff's actions were a "'but-for' cause of the employer's adverse action."  *Vega*, 801 F.3d at 90.  An allegation that "protected activity followed closely in time by adverse employment action" may indirectly support such a connection.  *Id.*

LIRR takes aim at Roache's complaints filed with LIRR, arguing that the absence of any contention that they were related to his race or national origin removes them from activity protected by Title VII.  *See* LIRR Defs.' Mem. at 25–26.  The Court agrees that the majority of Roache's complaints, as recounted in the amended complaint, do not qualify as protected activity.  For example, Roache contends that he was asked by his managers the cause of a failure of "phone communications," for which he blamed Assistant Foreman Matthew Legg.  Am.

Compl. ¶ 19.  When Legg responded to Roache's accusation with "negative emails," Roache

"filed a discrimination complaint."  *Id.* ¶ 20.  Roache provides no facts supporting a good-faith

belief that Legg's emails at all concerned Roache's race or national origin, or that they otherwise

constituted a violation of Title VII.  Similarly, Roache fails to assert a good-faith belief that

LIRR violated Title VII when Manager Sean Nunes expressed "hostility" towards him, after

which "the issue was reported."  *Id.* ¶ 23.  The pattern continues.  When Roache voiced his

concern about vacancies in his unit, then-Foreman Mark Ruff stated: "Take this shit and get the

fuck out of my office and tell that piece of shit Magwin that if I see him, then there are going to

be problems."  *Id.* ¶¶ 36–37.  Roache contends he informed both his manager and his direct

supervisor about Ruff's statement, but he does not complain, nor do the words in and of

themselves suggest, that Ruff's comment ran afoul of Title VII.  Consequently, these grievances

cannot form the basis of a Title VII retaliation claim.

The amended complaint recounts three other grievances within the limitations period:  (1)

Roache's reporting of "harassment" and "disparaging" treatment on August 29, 2017, *id.* ¶¶ 65–

66; (2) Roache's filing a claim with NYSDHR, *id.* at 3 ¶ 8; and (3) Roache's filing a grievance in

September 2018, for LIRR's failure to upgrade him, *id.* ¶ 98.  Even assuming that these three

grievances were protected activity, Roache fails to contend, beyond conclusory allegations, that

any of them were "but-for" causes of LIRR's adverse employment actions.  *See id.* ¶ 102 (merely

contending that "Defendants retaliated against Mr. Roache by taking away his rights and holding

him to a different standard than other employees").  The absence of any allegation of but-for

causation requires dismissal in their entirety of Roache's claims for retaliation.

Conclusion

For the foregoing reasons, Roache's NYSHRL and NYCHRL claims are dismissed in

their entirety for lack of subject matter jurisdiction, but without prejudice, and with leave to

24

amend, provided Roache can, in good faith, plead facts sufficient to establish any timely claims are not barred by the election-of-remedies doctrine.

Furthermore, Roache's Title VII claims are dismissed in their entirety as to all defendants except LIRR.  Roache's Title VII claims for retaliation against LIRR are similarly dismissed, and his Title VII claims for discrimination against LIRR are dismissed, except to the extent that they arise out of materially adverse employment actions in the manner discussed in this Memorandum and Order.

The parties are referred to Magistrate Judge James Orenstein for continued pretrial management.

So Ordered.

Dated:   Brooklyn, New York
         August 25, 2020

                                                    /s/ Eric N. Vitaliano
                                                  _____
                                                   ERIC N. VITALIANO
                                                   United States District Judge